## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **GENERAL DRIVERS AND HELPERS UNION, LOCAL NO. 554, Affiliated with the International Brotherhood of Teamsters,** | ) ) ) ) ) | |
| | ) | **8:12CV99** |
| **Plaintiff,** | ) ) | |
| V. | ) ) | **ORDER** |
| **ROBERTS DAIRY COMPANY, LLC, a limited liability company organized in the State of Illinois,** | ) ) ) ) | |
| **Defendant.** | ) | |

    This matter is before the Court on Plaintiff's motions to compel (filings 33 & 41) and Defendant's motion for a protective order (filing 47). For the reasons set forth below, Plaintiff's initial motion to compel (filing 33) will be denied as moot; Plaintiff's second motion to compel (filing 41) will be granted, in part; and (3) Defendant's motion for a protective order (filing 47) will be granted.

### BACKGROUND

    Plaintiff is a labor organization that acted as the collective bargaining agent for Defendant's employees. Plaintiff and Defendant entered into a local collective bargaining agreement ("Local Agreement") and Master Dairy Agreement ("MDA"). The MDA provides for arbitration of grievances. (Filing 1.) On May 4, 2011, Plaintiff filed a grievance ("Grievance #3981") with the Dairy & Food Joint Area Committee ("JAC") "[p]rotesting the moving of Bargaining Unit Work out of the Bargaining Unit on 05/02/11." (Filing 1-1.) On or about January 18, 2012, the JAC made the following ruling: "Based on the facts presented, the claim of the [Plaintiff] is upheld." (Id.)

    Plaintiff filed this action on March 12, 2012, asserting that Defendant has failed to

return the bargaining unit work taken out of the bargaining unit and has failed to make affected employees whole, thereby violating the JAC's ruling. (Filing 1.) Plaintiff also contends that Defendant continues to violate the JAC ruling, the MDA and the Local Agreement by diverting bargaining unit work from Plaintiff to non-bargaining unit employees and subcontractors. Plaintiff has requested that the Court enforce the JAC's ruling and enjoin Defendant from continuing to violate the MDA and the Local Agreement.

On August 15, 2012, Plaintiff filed a motion to compel Defendant to provide additional responses to Plaintiff's Interrogatory Nos. 5 through 13 and Document Production Request No. 1. (Filing 33.) Defendant served Plaintiff with supplemental discovery responses on or about September 14, 2012. Plaintiff concluded that several of Defendant's supplemental responses remained deficient and, consequently, filed a second motion to compel (filing 41) on September 25, 2012. Plaintiff's second motion to compel asserts that Defendant's responses to Interrogatory Nos. 2 through 10 remain incomplete and evasive.[1]

On October 10, 2012, Defendant filed a motion for protective order (filing 47) seeking to limit the disclosure of certain documents that Plaintiff has requested Defendant to produce. These documents generally include Defendant's accounting records and other documents reflecting Defendant's financial information. Plaintiff refused to stipulate to the entry of a confidentiality order which covers these materials.

**ANALYSIS**

Defendant claims that in May, 2011, it transferred certain work into the bargaining

---

[1] From Plaintiff's second motion to compel, it is unclear whether Plaintiff is presently satisfied with Defendant's responses to Document Production Request No. 1 and Interrogatory Nos. 11, 12 and 13. Correspondence between counsel following Defendant's submission of supplemental discovery responses indicates that Plaintiff now considers the responses to these discovery requests sufficient. (Filing 42-2.) Given this correspondence, as well as the timing and content of the motions to compel, the Court will assume that Plaintiff now finds Defendant's responses to these discovery requests adequate. Therefore, Plaintiff's initial motion to compel will be deemed moot.

unit represented by Plaintiff and transferred other work out of the bargaining unit. Defendant asserts that it transferred three different types of work: (a) delivery routes from distribution warehouses to customers; (b) transportation routes from production facilities to distribution warehouses; and (c) production work. Defendant claims that the overall impact of the transfer of work benefitted Plaintiff's bargaining unit. Defendant maintains that the only transfers relevant to this action are those involving delivery routes.

Plaintiff's Interrogatory Nos. 2, 3 and 4 apparently seek to elicit information regarding route transfers. Interrogatory No. 2 provides:

> Please specify each and every sales customer who before May 2, 2011 was serviced by a bargaining unit employee and who after May 2, 2011 was serviced by a person or organization not a party of the bargaining unit by giving their name, address, and telephone number.

(Filing 42-1.) Interrogatory No. 3 states:

> Please explain in detail how a bargaining unit employee would be compensated for each sales customer mentioned in the responses to Interrogatory No. 2 if the work were still being performed by a bargaining unit employee after May 2, 2011.

(*Id.*) Interrogatory No. 4 provides:

> For each and every sales customer mentioned in the response to Interrogatory No. 2, please compute the compensation that would have been paid to a bargaining unit employee if the bargaining unit employee performed the work after May 2, 2011.

(*Id.*) In response to these interrogatories, Plaintiff produced documents identifying each route that was transferred out of the bargaining unit, the commission rate, the sales made to each account and the total amount of lost commissions.

Interrogatory Nos. 5, 6 and 7 seek information regarding transportation jobs which

3

were transferred from the bargaining unit. Interrogatory No. 5 requests:

> Please specify each and every transportation job which was before May 2, 2011 serviced or worked by a bargaining unit employee and which after May 2, 2011, was serviced by a person or organization not a part of the bargaining unit by giving a complete description of the date of the transportation job, the complete route, and the beginning and ending point of the transportation job.

(*Id.*) Interrogatory No. 6 provides:

> Please explain in detail how a bargaining unit employee would be compensated for each transportation job mentioned in the response to Interrogatory No. 5 if the work were still being performed by a bargaining unit employee after May 2, 2011.

(*Id.*) Interrogatory No. 7 states:

> For each and every transportation job mentioned in response to Interrogatory No. 5, please compute the compensation that would have been paid to a bargaining unit employee if the bargaining unit employee performed the work after May 2, 2011.

(*Id.*) In response to Interrogatory No. 5, Defendant stated:

> No transport jobs were removed from the bargaining unit as a result of the May 2, 2011 rerouting. One transport job was added to the bargaining unit and was filled by posting the position for Omaha employees to bid on. An Omaha employee bid on the open position, was awarded the job, and was transferred to a bargaining unit position in Salina.
>
> Stating further, pursuant to Rule 33(d), the answer to this interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Defendant's business records, and the burden of deriving or ascertaining the answer will be substantially the same for either party, therefore, Defendant has produced the following records from which an answer to this interrogatory may be obtained: Roberts00016-00018.

4

> As demonstrated by Roberts 00016-00018, there was an average of 39 '40 Hour Transport' employees and 5 Shagmen employees in the year proceeding May 2011. In the year starting May 2011, there was an average of 37 '40 Hour Transport' Employees and 6 Shagmen. The 1 employee drop in the average number of transport employees was not due to the transportation changes of May 2011, but was due to a drop in overall production, as discussed in interrogatory 8 and demonstrated in part by Roberts0124.

(*Id.*) Defendant responded to Interrogatory No. 6 by stating: "Not applicable because a transport job was added to, not removed from the bargaining unit" and by directing Plaintiff to documents produced by Defendant. Defendant's response to Interrogatory No. 7 was only: "Not applicable because a transport job was added to, not removed from, the bargaining unit." (*Id.*)

Interrogatory Nos. 8, 9 and 10 seek to elicit information regarding production work transferred from the bargaining unit. Interrogatory No. 8 provides:

> For each and every production job which was before May 2, 2011 serviced or worked by a bargaining unit employee and which after May 2, 2011 was serviced or worked by a person or organization not a part of the bargaining unit, give a complete description of the work transferred, the dates the work was performed elsewhere, and the person or organization performing the work.

(*Id.*) Interrogatory No. 9 states:

> Please explain in detail how a bargaining unit employee would be compensated for each production job mentioned in response to Interrogatory No. 8 if the work were still being performed by a bargaining unit employee after May 2, 2011.

(*Id.*) Interrogatory No. 10 provides:

> For each and every production job mentioned in response to Interrogatory No. 8, please compute the compensation that would have been paid to a bargaining unit employee if the bargaining unit employee performed the work after May 2, 2011.

5

(*Id.*) Defendant objected to each of these interrogatories, claiming that the information requested was irrelevant because the production work transferred on May 2, 2011, was not part of Plaintiff's grievance. Subject to this objection, Defendant stated as follows in response to Interrogatory No. 8:

> [T]he May 2, 2011 change in operations did not result in any production jobs being lost by the bargaining unit. Production work performed by the bargaining unit in Omaha was transferred to employees in Wichita represented by the United Food and Commercial Workers Union. However, all of the production work transferred from Omaha to Wichita was replaced by production work that was transferred from Iowa City to Omaha and is being performed by the bargaining unit without loss of any production jobs. Had the production work transferred from Omaha to Wichita not been transferred, the Iowa City production work would not have been transferred to Omaha.
>
> Pursuant to Rule 33(d), the answer to this interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Defendant's business records, and the burden of deriving or ascertaining the answer will be substantially the same for either party, therefore, Defendant has produced the following records from which an answer to this interrogatory may be obtained: Roberts00016-00018.
>
> In the year preceding May 2011, there was an average of 26,477 production pounds, 52 Plant Employees, and 40 Cooler Employees. In the year beginning May 2011, there was an average of 24,404 production pounds, 50 Plant Employees, and 41 Cooler Employees. The 7.8% drop in average production is consistent with the industry drop in production reflected in Roberts00124. The Company also eliminated one production position due to a technological innovation during this time (which was not grieved by the union). The Company has also reduced five salaried (non-union) positions over the last two years.

(*Id*.) Defendant's responses to Interrogatory Nos. 9 and 10 likewise assert that no production jobs were lost by the bargaining unit as a result of the May 2011 action and, additionally, that responses to these interrogatories could be determined by reviewing documents produced by Defendant.

Plaintiff has two primary complaints about Defendant's discovery responses. First, Plaintiff takes issue with the fact that Defendant responded to several of the interrogatories by offsetting production and transportation work that was allegedly transferred out of the bargaining unit against that which was allegedly transferred in. Second, Plaintiff maintains that it is impossible from the business records produced to extract the specific information requested by the interrogatories. Plaintiff recognizes that [Fed. R. Civ. P. 33(d](https://www.law.cornell.edu/rules/frcp/rule_33)) allows a party to respond to interrogatories by producing documents, but claims that Defendant's failure to provide any tools guiding Plaintiff to the specific responsive documents related to a specific interrogatory does not satisfy [Fed. R. Civ. P. 33(d)](https://www.law.cornell.edu/rules/frcp/rule_33).

With respect to Interrogatory Nos. 2, 3 and 4, the Court finds that Defendant's responses are sufficient. Although Defendant included information regarding work transferred into the bargaining unit, Plaintiff nevertheless received the information it requested. Not only did Defendant refer Plaintiff to documents, but it also attached several exhibits to its responses containing a complete answer to each interrogatory. Plaintiff's motion to compel will be denied as to Interrogatory Nos. 2, 3 and 4.

However, Defendant's responses to Interrogatory Nos. 5, 6, 7, 8, 9 and 10 require supplementation. Defendant's answer to each of these interrogatories is seemingly evasive and incomplete. Plaintiff's interrogatories seek information regarding specific transportation or production jobs transferred out of the bargaining unit. Defendant's responses seem to focus on Defendant's assertion that no production or transportation jobs were "lost" or "removed" because other work was allegedly transferred into the bargaining unit. Simply put, Defendant's responses do not directly answer the questions asked.

Defendant's responses did point Plaintiff to documents which supposedly fully answer the interrogatories. Defendant did not, however, provide the Court with copies of the referenced documents. Defendant contends that these materials were not provided to the Court because Plaintiff refused to stipulate to the entry of a protective order limiting disclosure of the materials. However, even though Plaintiff would not stipulate to the entry of a protective order, Defendant could have nevertheless filed the documents under provisional seal for consideration in connection with this motion. In any event, the Court

7

finds it unnecessary to review the produced documents and evaluate whether they sufficiently respond to the interrogatories. Instead, the Court will order Defendant to supplement its interrogatory responses to answer the questions specifically asked. If Defendant believes that the requested information can be found through an evaluation of certain documents, Defendant shall provide Plaintiff with an indices or other tool guiding Plaintiff to the requested information.

Finally, the Court will grant Defendant's motion for a protective order. Defendant produced business documents in response to Plaintiff's interrogatories and simply seeks to protect these records from public disclosure. This request is reasonable and would not prejudice Plaintiff. Pursuant to Defendant's proposed protective order, a party seeking to challenge or contest the designation of specific documents as confidential may do so upon motion after attempting to resolve the conflict without Court intervention. Therefore, with respect to the disclosure of documents, the parties shall govern themselves in accordance with the provisions set forth in Defendant's motion. If Defendant has withheld responsive documents due to its desire to have a protective order in place, those documents must now be produced.

**IT IS ORDERED:**

1. Plaintiff's Motion to Compel Discovery Responses (filing 33) is denied as moot.

2. Plaintiff's Second Motion to Compel Discovery Responses (filing 41) is granted, in part. By or before January 14, 2012, Defendant shall supplement its responses to Interrogatory Nos. 5 through 10 as set forth above.

3. Defendant's Motion for a Protective Order (filing 47) is granted. The parties shall govern themselves in accordance with the provisions set forth in Defendant's motion.

4. A telephone conference with the undersigned magistrate judge will be held on Friday, January 4, 2013, at 10:00 a.m., for the purpose of reviewing the preparation of the case to date and the scheduling of the case to trial.

Plaintiff's counsel shall initiate the call to the Court.

**DATED December 13, 2012.**

                        **BY THE COURT:**

                        **S/ F.A. Gossett**
                        **United States Magistrate Judge**